UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. JOHNSON, | ) | CASE NO. 1:17-cr-362 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is a motion to vacate, set aside, or correct sentence filed by *pro se* petitioner William J. Johnson ("Johnson") pursuant to 28 U.S.C. § 2255 (Doc. No. 40 & 40-6 ["Mot."].) Respondent United States of America (the "government") opposes the motion. (Doc. No. 52 ["Opp'n"].) For the reasons that follow, Johnson's motion to vacate is denied.

# I. BACKGROUND

On August 10, 2017, following a traffic stop, police officers found a Springfield Armory, Model XD-4 40-millimeter caliber pistol loaded with 11 rounds of 40 caliber ammunition in the glovebox, a digital scale and marijuana in the center console, and crack cocaine in a compartment next to the steering wheel of the car Johnson was driving.[1] (Doc. No. 49 (Change of Plea Hearing Transcript ["Guilty Plea TR"]) at 390; Doc. No. 50 (Sentencing Hearing Transcript ["Sent. TR"]) at 415.) Johnson was arrested and charged with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Attorney Mark

---

[1] Johnson was driving his mother's car at the time of the arrest. (Mot. at 258.)

DeVan ("DeVan") was appointed to represent Johnson.[2]

On November 20, 2017, defense counsel filed a motion to suppress the evidence obtained at the scene of the traffic stop, as well as the statements Johnson made thereafter to law enforcement. (Doc. No. 12.) In it, counsel argued that the traffic stop was not supported by probable cause or reasonable suspicion of ongoing criminal activity. (*Id*. at 45.) On January 26, 2018, the Court conducted a hearing on the motion and, in a subsequent proceeding on February 5, 2018, the Court denied the motion and stated its reasons on the record. (Minute Order, 2-5-2018.)

At Johnson's request, the Court ordered the completion of a Pre-Plea, Pre-Sentence Report of Criminal History. (*See* Doc. No. 17 (Motion).) On January 16, 2018, the Criminal History Category Report was filed and provided notice of Johnson' criminal history, which included multiple felonies that served as the predicate offenses for the felon in possession conviction that is the subject of the present motion to vacate. (Doc. No. 19 (Criminal History Category Report).)

On February 1, 2018, defense counsel filed a motion in limine to exclude evidence of Johnson's drug possession or use of drugs and drug paraphernalia. (Doc. No. 23.) In the memorandum in support, counsel outlined the three elements the government must prove at trial in order to secure a conviction under 18 U.S.C. § 922(g)(1). (*Id*. at 105.) On February 23, 2018, Johnson pleaded guilty, without the benefit of a plea agreement, to the offense charged in the indictment. On August 10, 2018, the Court sentenced Johnson to a term of imprisonment of 70

---

[2] Johnson claims his attorney was Robert Dixon. (Mot. at 231.) And throughout Johnson's motion he refers to his defense counsel as "Mr. Dixon." (*See e.g., id*.) However, the name of Johnson's trial counsel is Mark R. DeVan. (CJA Appointment of Attorney Mark R. DeVan, 9-25-2017; *see* Guilty Plea TR at 368; Sent. TR at 397.)

months, to be followed by three years of supervised release, and ordered Johnson to pay a special assessment of $100. (Doc. No. 38 (Judgment).)

Johnson did not take a direct appeal from the judgment. Rather, on August 29, 2019, Johnson filed the present § 2255 motion in this Court. In his motion, he alleges that defense counsel provided ineffective assistance by: "failing to investigate the government's burden of proof to sustain a conviction for [a] violation of 18 U.S.C. § 922(g)" and "misadvising" him as to that burden of proof. (Mot. at 232.) He also claims that counsel was ineffective "in failing to file [a] notice of appeal despite [p]etitioner's express desire to appeal." (*Id.*) Johnson requests an evidentiary hearing as to each ground for relief. (*Id.*)

## II. LAW AND ANALSIS

### A. Standard of Review—28 U.S.C. § 2255

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).

3

"Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Indeed, "[b]ecause courts must be able to rely on a defendant's statements during a plea colloquy, 'allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible'

4

and 'patently frivolous or false.'" *Caruthers v. United States*, No. 3:07-0635, 2008 WL 413631, at *5 (M.D. Tenn. Feb 12, 2008) (quoting *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)). Therefore, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Posey v. United States*, No. 3:20-CV-00121, 2020 WL 2129235, at *9 (M.D. Tenn. May 5, 2020) (quoting *Lemaster,* 403 F.3d at 221–22). That is because "[t]he plea colloquy process exists in part to prevent defendants from making such claims [of misrepresentation and a lack of understanding]." *Barnett v. United States,* No. 2:10-CR-116, 2017 WL 160896, at *4 (E.D. Tenn. Jan. 13, 2017) (citing *Ramos v. Rogers*, 170 F.3d 560, 560–66 (6th Cir. 1999)). "Otherwise, a defendant could plead guilty in the hope of obtaining favorable treatment during sentencing while reserving the right to raise all manner of constitutional claims if the result of the sentencing process was not as he had hoped." *Id.* at *7.

### B. Ineffective Assistance of Counsel

The issues Johnson raises in his § 2255 motion invoke a defendant's constitutional right to receive effective assistance of counsel. Claims of ineffective assistance of counsel are properly raised in the first instance in a motion to vacate pursuant to § 2255, even if the petitioner did not seek a direct review of his judgment. *Massaro v. United States,* 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

Johnson's ineffective assistance of counsel claims are governed by the familiar standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under this standard, a petitioner must demonstrate that counsel's performance was deficient, and

that this deficient performance caused prejudice to the petitioner. *Strickland*, 466 U.S. at 687. To demonstrate that counsel's performance was deficient, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. To establish that the deficient performance caused prejudice to the petitioner, he must show that the counsel's errors were so serious that the petitioner was deprived a fair trial. *Id*. Essentially, a petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant is entitled to effective assistance of counsel during the plea and sentencing process. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In the context of a guilty plea, an attorney provides ineffective assistance by performing outside "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). While petitioner does not have to demonstrate that he would have prevailed at trial, a petitioner alleging ineffective assistance of counsel in connection with his guilty plea must establish both deficient performance and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (quotation marks and citations omitted); *see Griffin v. United States*, 330 F.3d 733, 737 n.1 (6th Cir. 2003) (citation omitted).

"The reviewing court's scrutiny of counsel's performance is highly deferential," and "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *McQueen v. Scroggy*, 99 F.3d

1302, 1311 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 690), *overruled on other grounds by In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004). A petitioner's disagreements with the strategies or tactics of counsel are not enough to support an ineffective assistance of counsel claim. *Strickland* at 689; *see McQueen*, 99 F.3d at 1311 ("[T]rial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy.") (quotation marks and citations omitted).

   **C.**  **Effectiveness of Counsel at the Plea Hearing**

Johnson's argues that, prior to the guilty plea hearing, counsel provided ineffective assistance by failing to investigate and/or advise him of the government's burden of proof and the elements of the charged offense. He claims that trial counsel told him "that the mere fact that the gun was found in the car he was driving, without any other occupants present, was sufficient for conviction under [§] 922(g)." (Mot. at 261.) According to Johnson, his counsel should have known that such evidence was insufficient to establish dominion and control over the firearm, and the government could not meet its burden of proof. (*Id.*) He insists that "the Government had no evidence to show that [Johnson] knew the gun was in the glovebox or that he intended to exercise dominion or control over it." (*Id.* at 262.) Therefore, Johnson contends, because he did not know that the mere presence in the car with the gun was insufficient to prove constructive knowledge, he did not enter the guilty plea intelligently. (*Id.* at 264.)

The government has submitted an affidavit from Attorney DeVan, in which counsel states that, in conversations with Johnson, he reviewed with Johnson:

> the burden of proof and the elements of the offense of felon in possession and I explained applicable legal definitions in plain terms.

7

> … Mr. Johnson and I spoke about the facts of his case and the elements the government must prove, and, specifically, whether Mr. Johnson had reason to believe a firearm was in the car he operated at the time of his arrest. I explained to Mr. Johnson that under 18 U.S.C. § 922(g), it is a federal crime for a felon to possess a firearm, and under the doctrine of constructive possession he had possession of the firearm, even if he did not have direct physical control of it.
>
> ***
>
> Prior to his change of plea hearing on February 23, 2018, I reviewed with Mr. Johnson each and every element of the crime of felon in possession. I explained to Mr. Johnson that for the court to find that he had constructive possession of the firearm in question, the government must prove that he had knowledge of the firearm being in the car or that he was willfully blind to the fact.

(Doc. No. 53 (Affidavit of Mark R. DeVan ["DeVan Aff."]) ¶¶ 7, 8, 15.)

The Court need not resolve the factual dispute created by the arguably conflicting recollections of Johnson and his counsel via an evidentiary hearing because Johnson's own admissions at the plea hearing conclusively demonstrate that Johnson cannot establish that he was prejudiced by any advice he received. During the plea colloquy, Johnson told the Court he understood that "in order to convict [him] of the charge set forth in the indictment, the government would have to prove … beyond a reasonable doubt[,]" that he "knowingly possessed a firearm and/or ammunition[.]" (Guilty Plea TR at 388–89.) The government further explained that

> [h]ad this case gone to trial, the United States of America would have been able to prove beyond a reasonable doubt that … the defendant knowingly possessed this firearm and ammunition under two aspects. One being for the knowledge – the knowingly element that the defendant exhibited willful blindness and that … the defendant deliberately ignored that a high probability of the firearm was located in the glove box of his car and the defendant deliberately closed his eyes to what was obvious. Furthermore, under the possessing element, that the possession element in this case would be under constructive possession and that is the defendant had the right to exercise physical control over the firearm or ammunition and knew that he had this right and that he intended to

8

> exercise physical control over the firearm or ammunition at some time either directly or through other persons.

(*Id.* at 390–91.) The Court asked Johnson if he understood the facts as recited by the ASUA and whether he acknowledged that, if the case proceeded to trial, the government would be able to establish these facts by proof beyond a reasonable doubt. (Guilty Plea TR at 391.) To each question, Johnson responded "Yes, Your Honor." (*Id.*)

The Court then asked Johnson if he had "discussed this case and this plea in detail with [his] attorney" and if his:

> attorney advised [him] of [his] constitutional and other rights, the nature of the charge, the elements of the offense that the government would have to prove at trial, the evidence that the government would present at trial, possible defenses that [he] might have, the advisory sentencing guidelines and other aspects of sentencing, the potential loss of Civil Rights and privileges such as the right to vote, the right to serve on a jury, the right to hold public office and the right to possess firearms and other potential consequences of pleading guilty in this case?

(*Id.* at 391–92.) The Court also asked Johnson if he was "fully satisfied with the legal services and advice provided to [him] by [his] attorney[.]" (*Id.* at 392.) To both questions, Johnson responded "Yes, Your Honor." (*Id.*)

And the Court asked Johnson if he was "pleading guilty to the offense charged against [him] in the indictment because [he was], in fact, guilty of committing that crime[,]" and if he was "now certain that [he] still wish[ed] to enter a plea of guilty in this case[.]" (*Id.* at 393.) To both questions, Johnson responded "Yes, Your Honor." (*Id.*) When the Court asked Johnson if he had "any questions whatsoever about this plea[,]" Johnson responded "No, Your Honor." (*Id.*) The Court concluded that Johnson's guilty plea was "knowingly, intelligently and voluntarily made with the advice of [his] counsel." (*Id.* at 394.)

Johnson's statements during the plea colloquy establish that he understood what the government's burden of proof at trial would have been under a theory of constructive possession and that he acknowledged the government would have been able to meet that burden. His statements show he understood the consequences of his guilty plea and had discussed them with counsel. Moreover, at sentencing, Johnson repeated that he understood the nature of the charge and the government's theory that he constructively possessed the firearm. In his allocution, Johnson told the Court "[m]y decision-making is what caused me to be charged with constructive possession, knowing that I let somebody in my car who most likely carried a gun or possibly could carry a gun." (Sent. TR at 413–14.)

Johnson's claims—that trial counsel provided ineffective assistance of counsel at the plea hearing and that he did not enter his guilty plea knowingly—are contradicted by his statements made during the plea colloquy and at sentencing. Accordingly, Johnson cannot demonstrate that he was prejudiced by any advice he may have received from counsel, and his motion to vacate, to the extent it concerns those claims, is denied.

### D. Counsel's Failure to File a Notice of Appeal

In his motion, Johnson maintains that "[i]mmediately after the Court imposed sentence," he "told defense counsel that he wanted to appeal." (Mot. at 235.) According to Johnson, "[c]ounsel's response was that an appeal (a) would upset the Government and likely cause [it] to bring additional charges related to a small amount of drugs [p]etitioner had on his person when he was arrested and (b) would not be fruitful." (*Id*. at 235–36.) He complains that "counsel's entire discussion with [p]etitioner about appealing was limited to a couple of minutes between when the Court imposed sentence and when the U.S. Marshal[]s returned [p]etitioner back to the

10

holding cell." (*Id.* at 236.) "Despite counsel's attempts to convince [p]etitioner not to appeal," petitioner insists that he "never told counsel he no longer wanted to appeal[,]" and "counsel never followed up with petitioner to explore appeal options." (*Id*. at 236.) It is Johnson's position that defense counsel "provided ineffective assistance in failing to file [a] notice of appeal despite [p]etitioner's express desire to appeal." (*Id*. at 232.)

Once again, recollections differ on the content of the conversations between Johnson and his counsel. Attorney DeVan avers that:

> Following sentencing, I discussed with Mr. Johnson the possibility of appealing his sentence and also warned him that, because he had received a downward departure, should the government cross-appeal and prevail, he might receive a greater sentence. Mr. Johnson agreed that an appeal would not benefit him. In addition, I advised Mr. Johnson that, should he change his mind and want to appeal his sentence, he had two weeks to file a notice of appeal but that he should not wait until the last minute to make that request. Mr. Johnson never contacted me with a request to appeal his sentence.

(DeVan Aff. § 18.) But, once again, the Court need not conduct an evidentiary hearing to resolve the factual dispute because missing from Johnson's motion is any assertion that Johnson explicitly instructed counsel to file an appeal.

By now it is well settled that when defense "counsel has consulted with the defendant … [,] [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe v. Flores-Ortega,* 528 U.S. 470, 478, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)*; see also Johnson v. United States,* No. 1:05 CV 101, 2007 WL 2071937, at *4 (N.D. Ohio July 16, 2007), *aff'd,* 364 F. App'x 972 (6th Cir. 2010). "Consultation occurs when the attorney 'advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes'". *Regaldo v. United States*, 334 F.3d 520, 525 (6th Cir. 2003) (quoting *Flores-Ortega,*

11

528 U.S. at 478).

The Sixth Circuit's decision in *Regalado*, involving similar facts, is both instructive and directly on point. There, "[a]fter her sentencing hearing, [the petitioner] initially expressed interest in appealing her sentence, but her retained attorney instead advised" that she pursue an alternate course of action. *Id.* at 521. The petitioner described this as "a meaningless consultation" because her defense counsel did not subsequently file the appeal. *Id.* at 525. Still, the petitioner did "not assert that she gave [her defense counsel] express instructions to file an appeal or that he failed to consult her on the benefits and drawbacks of appeal." *Id.* The court noted that the "issue is whether [the defense counsel's] performance was deficient because he knew that [the petitioner] wanted to appeal but he nonetheless" did not file the appeal. *Id.* The court held that because the petitioner "had failed to direct [her defense counsel] to file an appeal," defense counsel's performance was not deficient. *Id.* at 526.

Likewise, in *Shelton v. United States,* 378 F. App'x 536 (6th Cir. 2010), a Sixth Circuit panel held that "[s]ince petitioner did not prove he gave any express instruction [to his lawyer to file an appeal], it is clear that counsel did not render ineffective assistance of counsel" by failing to file an appeal. *Id.* at 539. Also, in *Coddington v. Langley,* 77 F. App'x 869 (6th Cir. 2003), the court held that "[i]n the absence of a directive from [the petitioner] to [his defense counsel] to appeal his plea, however, we are left with a situation in which [petitioner] conveyed at most an ambiguous interest in altering his sentence but not 'express instructions' regarding the appeal." *Id.* at 875. Therefore, defense counsel's failure to file an appeal was not deficient performance. *Id.* at 870. And in *Menefee v. United States*, No. 1:06CV813, 2006 WL 1967380 (N.D. Ohio July 12, 2006), the court held that "petitioner does not state a claim that counsel performed in a

professionally unreasonable manner" when the petitioner's "affidavit does not state that petitioner specifically instructed [his lawyer] to file an appeal and that he failed to follow the express instructions with respect to the appeal." *Id.* at *3.

So too here. Immediately after the sentencing hearing, Johnson "express[ed a] desire to appeal." (Mot. at 232.) Though they disagree as to the details of their conversation, Johnson and DeVan agree that counsel consulted with Johnson about the advisability of pursuing an appeal. *See Regalado*, 334 F.3d at 525. But Johnson does not allege that he ever expressly instructed his counsel to file a notice of appeal. As in the cases cited above, defense counsel's failure to file an appeal, following a consultation during which Johnson expressed interest in filing an appeal but never expressly instructed defense counsel to file an appeal, is not deficient performance. And even if Johnson "never told counsel that he no longer wanted to appeal[,]" (Mot. at 261), as Johnson contends, he still fails to show ineffective assistance of counsel; that Johnson did not disavow a previous interest in appealing is simply insufficient to show counsel's performance was deficient. *See Flores-Ortega*, 528 U.S. at 478.

Therefore, the Court holds that trial counsel did not provide ineffective assistance in failing to file an appeal. Johnson's motion, to the extent it concerns his counsel's failure to file an appeal, is denied.

### E. Evidentiary Hearing

"Section 2255 allows for the district court to exercise discretion in determining whether an evidentiary hearing is required." *Napier v. United States*, 9 F.3d 108 (Table), 1993 WL 406795, at *2 (6th Cir. Oct. 8 1993) (citing *Machibroda v. United States,* 368 U.S. 487, 495 (1962)). The Court may deny a request for an evidentiary hearing when petitioner has not

"specified what could be discovered through an evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). That is the case here. Johnson refers to his request for an evidentiary hearing in a single sentence without making arguments for why it is necessary in this case. (Mot. at 257.)

Moreover, as set forth above, the allegations in Johnson's motion are either contradicted by the record, or, even if not contradicted and taken as true, would not "entitle him to relief under § 2255." *Napier*, 1993 WL 406795, at *2; *see Amr v. United States,* 280 F. App'x 480, 485 (6th Cir. 2008) (petitioner was not entitled to an evidentiary hearing on his § 2255 motion because there was "nothing in the record to indicate that [petitioner] would [be] able to prove his allegations at an evidentiary hearing"). Accordingly, his request for an evidentiary hearing is denied.

## III. CONCLUSION

For the foregoing reasons, Johnson's motion to vacate, set aside, or correct his sentence is DENIED. Further, the Court CERTIFIES that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: July 24, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**